UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRECIOUS HUDSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-6151 |
| | § | |
| D. MILLER & ASSOCIATES, PLLC. | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Precious Hudson ("Plaintiff"), by and through her undersigned counsel, brings this Original Complaint against D. Miller & Associates, PLLC ("Defendant") and alleges as follows:

### I.  INTRODUCTION

1. This is an action for damages and other legal and equitable relief for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Texas Labor Code § 21.141 *et seq*.

2. Defendant is a law firm that represents victims of sexual misconduct and abuse, among other types of claimants. Despite this, Defendant, through its principal and firm founder/owner Darren Miller ("Miller"), subjected Plaintiff to years of unwelcome sexual comments, sexually explicit messages, physical contact, sexual propositions, and coercive conduct tied to Plaintiff's continued employment.

3. Plaintiff repeatedly attempted to maintain professional boundaries and declined Miller's advances. Miller nevertheless persisted, leveraged his authority as Plaintiff's employer, and created working conditions so intolerable that Plaintiff was forced to resign.

## II.     JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

5. Jurisdiction is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice occurred in this District. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) as the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.     PARTIES

6. Plaintiff is an individual who resides in Houston, Texas, and was employed by Defendant from March 2019 until her constructive discharge on September 10, 2025.

7. Defendant D. Miller & Associates, PLLC is a Texas law firm with its principal place of business in Houston, Texas. Defendant may be served with process through its registered agent for service, Darren A. Miller, at 10565 Katy Freeway, Suite 400, Houston, Texas 77024.

8. At all relevant times, Defendant acted through its principal and founder/owner, Miller, who had ultimate decision-making authority over Plaintiff, including authority over her job duties, promotions, compensation, and continued employment.

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On September 23, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Texas Workforce Commission–Civil Rights Division ("TWC-CRD").

10. The EEOC issued an expedited Notice of Right to Sue on September 30, 2025.

11. Plaintiff filed her Original Complaint on December 19, 2025, within 90 days of the EEOC's issuance of the Notice of Right to Sue.

12. As of the date of the filing of the Original Complaint, Plaintiff had requested, but had not yet received, the Notice of Right to File a Civil Action from TWC-CRD. TWC-CRD issued the Notice of Right to File a Civil Action on December 23, 2025. Plaintiff has now exhausted all administrative prerequisites.

## V.    FACTUAL ALLEGATIONS

13. In March 2019, Plaintiff, then twenty-six (26) years old, began working for Defendant as an Intake Specialist. Plaintiff received several promotions during her employment with Defendant, including Team Lead, Supervisor, and Lead Coordinator. Plaintiff last worked for Defendant as a Campaign Manager/Lead Generation Coordinator. Each role change resulted in a compensation increase.

14. Over the years, Plaintiff oscillated between full-time and part-time work, and in-office and remote work. Despite her remote work, Miller maintained regular electronic communication with Plaintiff through text messages, Skype, social media applications such as Snapchat, voice memos, and phone calls.

15. In her final 2 years of employment with Defendant, working as Defendant's Lead Coordinator and Campaign Manager/Lead Generation Coordinator, Plaintiff had to work closely with Miller, who is twenty-three (23) years her senior and married.

16. Beginning early in Plaintiff's employment with Defendant and continuing through its end, Miller subjected Plaintiff to repeated unwelcome, unwanted, intimidating, and offensive sexual comments, sexually explicit messages, and sexual propositions.

17. Miller frequently commented on Plaintiff's body, asked explicit sexual questions, sent sexually explicit images and videos of himself and others, requested nude photographs of Plaintiff, and pressured Plaintiff to engage in sexual activity with him, including requests for threesomes and other sexual encounters outside the workplace.

18. Miller often coupled his sexual advances with references to Plaintiff's job security, loyalty, advancement, or remaining in good standing with him, which caused Plaintiff to reasonably fear retaliation if she rejected him too harshly. Miller criticized or demeaned Plaintiff when she declined to engage with his sexual advances, while simultaneously suggesting that her continued favor or status depended on her willingness to do so. Miller frequently reminded Plaintiff that she did not have a college degree and claimed she would not be able to obtain a role like the one she had with Defendant elsewhere.

19. Miller made statements that compared women in sexual terms and suggested that Plaintiff's standing with him would improve if she were more responsive to him. Plaintiff reasonably understood these comments as conveying that her professional relationship with Miller and her continued employment were contingent on tolerating or accommodating his sexualized behavior and demands.

20. Plaintiff reasonably perceived Miller's conduct as coercive, humiliating, and threatening to her continued employment. Plaintiff repeatedly attempted to redirect Miller's interactions to a professional level and declined Miller's advances. However, Miller persisted.

21. Plaintiff adopted a light, non-confrontational tone and engaged in playful banter in an effort to deflect Miller's advances without provoking retaliation. Plaintiff made limited, reluctant concessions she believed necessary to preserve her employment, such as sending Miller nude photographs following his repeated badgering.

22. Early in her tenure, Plaintiff's job duties and periods of part-time or remote work limited Miller's direct physical access to her, and Plaintiff believed she could continue performing her job while managing Miller's inappropriate and mostly electronic-communication-based conduct. As Plaintiff's role evolved and she was required to work more closely and in person with Miller, the sexual harassment correspondingly escalated.

23. Miller was not satisfied with Plaintiff's attempts to keep him at arm's length. In the summer of 2025, Miller's conduct towards Plaintiff escalated in severity. He groped Plaintiff and "joked" that he had sexually assaulted her. Plaintiff had no choice but to resign.

24. Miller's harassment began shortly after Plaintiff became employed by Defendant, when Miller initiated non-work-related communications with Plaintiff and repeatedly pressured her to allow him to view content she posted on a personal social media platform, Snapchat. Plaintiff initially resisted, stating that doing so was inappropriate because Miller was her employer. Miller persisted, telling Plaintiff he was "mad" at her for refusing to add him, so Plaintiff relented. Miller used Snapchat to make personal and sexually suggestive comments to Plaintiff.

25. Throughout 2019 and 2020, Miller repeatedly made sexually charged comments to Plaintiff during some work-related gatherings, paid an inordinate amount of attention towards her in group settings, and asked intrusive questions regarding Plaintiff's sexual orientation, dating history, and sexual experiences, including whether she dated men or women and whether she would consider having a "sugar daddy."

26. In January 2021, Miller told Plaintiff he had "news" to share with her about happenings at the firm, and stated, "You'll be so happy, I know you'll want to express your appreciation." Plaintiff reasonably construed Miller's words to convey that he had sexual expectations in exchange for positive work-related news.

27. Shortly thereafter, Miller sent Plaintiff sexually explicit content involving himself and another employee, and prompted Plaintiff, "your turn," which Plaintiff reasonably understood as a request for sexual images from Plaintiff.

28. In March 2021, Miller commented on a photograph Plaintiff posted to her Snapchat account, complimenting her physique and asking her to see her breasts.

29. In April 2021, after Plaintiff had declined Miller's prior sexual advances, Miller questioned, "You are still against it???" and "You/her/me? I think that would be awesome," which Plaintiff understood to be a proposition for a sexual encounter with Miller and another employee, with whom Miller was having an extramarital affair. Miller suggested that during this encounter, they would "get f****d up, talk business, and get f****d up."

30. In April and July 2021, Miller continued to comment on Plaintiff's body through Snapchat, which included telling her that she looked "yummy."

31. In December 2021, Miller informed Plaintiff that he was upset with her and asked for a phone call. During this phone call, Miller expressed that he was upset that Plaintiff had not sent him sexually explicit pictures or videos.

32. Miller had informed Plaintiff that several long-standing employees who had been successful at his firm had engaged in sexual activity with him. In February 2022, Miller told Plaintiff, "You make me smile," and "I NEVER forget those people who have been loyal to me. NEVER!" Plaintiff reasonably construed this message as a form of pressure to engage with Miller as he desired if Plaintiff wanted to become a long-standing, successful employee at his firm.

33. In February 2022, Miller repeatedly pressured Plaintiff to see him outside of work. Miller directed Plaintiff to accompany him to a massage parlor during her lunch break, as a reward for her hard work. Miller had arranged for Plaintiff's massage to occur in the same room as his,

where Miller had arranged for sexual services to be performed on him by the masseuse and in Plaintiff's presence. In addition to being exposed to this sexually explicit conduct between Miller and the masseuse, the masseuse touched Plaintiff without her consent, and Plaintiff was placed in a very uncomfortable and humiliating situation orchestrated by Miller. Thereafter, Miller invited Plaintiff to return to the massage parlor with him, which she declined.

34. In December 2022, during a work-related dinner with a third-party vendor, Miller repeatedly pressed his leg against Plaintiff's leg under the table and, when Plaintiff attempted to stop the contact, Miller sent Plaintiff a text message indicating he wanted to have sex with her.

35. In June 2023, Miller sent a short voice note to Plaintiff to inform her that she would be taking on a new role at the firm and that he expected her to work for him for a long time. In the voice note, Miller also mentioned that another employee had sent a video to him of that employee engaging in sexual activity with another man. Miller questioned why Plaintiff had not sent him "pictures" and why Plaintiff was not "sharing" with him. He ended the voice note by stating, "I'll be looking for your response."

36. In August 2023, Miller messaged Plaintiff at 9:14 pm and asked Plaintiff to meet with him that evening to "discuss your new role."

37. In November 2023, Miller told Plaintiff he wanted to take her out to dinner to discuss how the firm's upper management felt about Plaintiff's performance at work. After dinner, Miller propositioned Plaintiff for sex, which Plaintiff declined.

38. In December 2023 and throughout 2024, Miller would respond to Plaintiff's attempts to discuss work with sexual comments and innuendo. For example, after Plaintiff provided Miller with work-related performance data, Miller stated, "You suck" to Plaintiff. Believing this comment was intended to express Miller's unhappiness with her performance,

Plaintiff defended herself and said, "I don't." Miller replied, "That's right, you swallow." On another occasion, Miller sent Plaintiff a voice message in which he expressed that seeing certain metrics she provided about firm business made him want to perform a sexual act on her, which Plaintiff found degrading and inappropriate.

39. In January 2025, Miller explained to Plaintiff that he had complimented her work ethic and performance to the firm's upper management, while also expressing that he hoped she would invite him over to her apartment.

40. In April 2025, during a meeting with Miller at work, Miller made obscene gestures towards Plaintiff that simulated oral sex.

41. In May 2025, Miller informed Plaintiff that he had viewed a social media post that reminded him of Plaintiff, which he then sent to Plaintiff. Miller sent Plaintiff an image of a naked woman.

42. In June 2025, during a phone call, Miller pressed Plaintiff to engage in a sexual relationship with him, despite Plaintiff reiterating that she wanted to keep their relationship professional.

43. In July 2025, Miller summoned Plaintiff to his office under the pretense of discussing work, asked Plaintiff for physical affection, and told her that no one was present and that the cameras did not work, causing Plaintiff to feel unsafe and intimidated.

44. In August 2025, Plaintiff participated in a remote teleconference in her office, using Microsoft Teams. During this conference, Plaintiff's head and neck area would have been visible to conference participants, but not her body. Miller joined her in the office and, during the meeting, wrote on a piece of paper a note to Plaintiff that indicated he was going to touch her and that she should not move. Plaintiff feared that any movement or attempt to stop Miller would draw attention

from others on the call and reveal what was happening. As a result, Plaintiff froze as Miller slid his hand under the back of Plaintiff's shirt and rubbed Plaintiff's back, waist, and buttocks. While Plaintiff was "muted" during the conference, Miller made audible sexual sounds while he groped her.

45. Days later, Plaintiff returned to the office, and Miller stated to Plaintiff, "Isn't it funny how I'm the biggest sexual assault attorney and I just sexually assaulted you right here in your office."

46. A few weeks later, when his attempt to engage Plaintiff in a text message discussion about oral sex failed to generate the reaction he wanted, Miller referenced the possibility of replacing Plaintiff with another woman who would be more sexually receptive to him, and cautioned Plaintiff to "not be mad when I find a new b***h to replace you."

47. Miller's escalating sexual harassment and demands rendered Plaintiff's working conditions intolerable. Plaintiff resigned on September 10, 2025, citing constructive termination.

48. Miller's conduct toward Plaintiff, from approximately March 2019 through Plaintiff's constructive discharge on September 10, 2025, was part of a single, continuous pattern of sexual harassment and coercive behavior.

49. Plaintiff remained employed despite the harassment because she needed her job, feared retaliation, and believed she would be terminated if she offended Miller by rejecting him too harshly. Miller reinforced this belief through statements implying that advancement and continued employment were tied to personal loyalty and indulging in his sexual desires.

## VI. COUNT I – Sexual Harassment (Quid Pro Quo and Hostile Work Environment) in violation of Title VII of the Civil Rights Act of 1964

50. Plaintiff incorporates all preceding paragraphs.

51. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

52. As a female, she belongs to a class protected by 42 U.S.C §2000e-2(a)(1).

53. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

54. Defendant, through its principal and owner, Miller, subjected Plaintiff to unwelcome conduct of an indisputably sexual nature based on sex.

55. Miller, who exercised supervisory and decision-making authority over Plaintiff's job duties, compensation, advancement, and continued employment, conditioned favorable treatment and the avoidance of adverse treatment on Plaintiff's willingness to tolerate or engage with his sexual demands. Miller repeatedly intertwined sexual comments, requests, and propositions with discussions of Plaintiff's work performance, loyalty, and standing at the firm, and alternated between praise and hostility based on Plaintiff's responsiveness. When Plaintiff declined or attempted to disengage from Miller's sexual advances, Miller responded with demeaning remarks, threats of replacement, and statements implying that other women were more willing to satisfy him and therefore more valuable to him.

56. Miller's conduct was severe or pervasive, altered the terms and conditions of Plaintiff's employment, and created an intimidating, hostile, and abusive working environment.

57. Miller's harassment of Plaintiff was based on Plaintiff's sex.

58. Miller's harassment of Plaintiff affected a term, condition, or privilege of Plaintiff's employment, as the harassment was so severe or pervasive that Plaintiff was constructively discharged.

59. Miller acted with reckless indifference to Plaintiff's federally protected rights.

### VII.    COUNT II – Sexual Harassment (Quid Pro Quo and Hostile Work Environment) in violation of Texas Labor Code Chapter 21

60. Plaintiff incorporates all preceding paragraphs.

61. Plaintiff is an employee within the meaning of Tex. Lab. Code § 21.002(7).

62. As a female, she belongs to a class protected by Tex. Lab. Code § 21.051(1).

63. Defendant is an employer within the meaning of Tex. Lab. Code § 21.002(8).

64. Defendant, through its principal and owner, Miller, subjected Plaintiff to unwelcome conduct of an indisputably sexual nature based on sex.

65. Miller, who exercised supervisory and decision-making authority over Plaintiff's job duties, compensation, advancement, and continued employment, conditioned favorable treatment and the avoidance of adverse treatment on Plaintiff's willingness to tolerate or engage with his sexual demands. Miller repeatedly intertwined sexual comments, requests, and propositions with discussions of Plaintiff's work performance, loyalty, and standing at the firm, and alternated between praise and hostility based on Plaintiff's responsiveness. When Plaintiff declined or attempted to disengage from Miller's sexual advances, Miller responded with demeaning remarks, threats of replacement, and statements implying that other women were more willing to satisfy him and therefore more valuable to him.

66. Miller's conduct was severe or pervasive, altered the terms and conditions of Plaintiff's employment, and created an intimidating, hostile, and abusive working environment.

67. Miller's harassment of Plaintiff was based on Plaintiff's sex.

68. Miller's harassment of Plaintiff affected a term, condition, or privilege of Plaintiff's employment, as the harassment was so severe or pervasive that Plaintiff was constructively discharged.

69. Miller acted willfully, wantonly, maliciously, and in conscious disregard of Plaintiff's rights.

### VIII.   PRAYER FOR RELIEF

70. **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and award:

    a. Back pay and front pay;

    b. Compensatory damages for emotional distress and mental anguish;

    c. Punitive damages as allowed by law;

    d. Attorneys' fees and costs;

    e. Pre- and post-judgment interest; and

    f. All other relief the Court deems just and proper.

## IX. JURY DEMAND

71. Plaintiff demands a trial by jury on all issues so triable.

Dated: January 12, 2026

Respectfully Submitted,

*/s/ Justin V. Sumner*
**Justin V. Sumner**
State Bar No. 24063022
Fed. Bar No. 3159343
jsumner@sumnerlaw.com
**Amanda Bridson**
State Bar No. 24092172
Fed. Bar No. 3162490
abridson@sumnerlaw.com

**SUMNER LAW, LLP**
3006 Cole Avenue
Dallas, Texas 75204
Tel: 214-965-9229
Fax: 214-965-9215

**ATTORNEYS FOR PLAINTIFF**